UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AKZO NOBEL SURFACE CHEMISTRY LLC,<br><br>    Plaintiff,<br><br> v.<br><br>ALAN J. STERN and HUNTSMAN PETROCHEMICAL, LLC,<br><br>    Defendants. | Civil Action No.2:13-cv-00826 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

  Plaintiff, Akzo Nobel Surface Chemistry LLC (hereafter "Akzo" or "Plaintiff"), through its attorneys, for its complaint against defendants Alan J. Stern (hereafter "Mr. Stern") and Huntsman Petrochemical, LLC (hereafter "Huntsman") (collectively hereafter "Defendants"), alleges as follows:

**NATURE OF ACTION**

  1. This is an action for unfair competition in violation of section 43(a)(1)(a) of the Lanham Act. There are related claims of breach of violation of the Ohio Deceptive Trade Practices Act, contract, violation of the Ohio Uniform Trade Secrets Act, breach of confidentiality and unjust enrichment. Akzo's claims arise from the actions of Defendants, who misappropriated trade secret and confidential information known to belong to Akzo and made false and misleading statements in commerce by filing patent applications covering the misappropriated technology.

## THE PARTIES

2. Plaintiff Akzo Nobel Surface Chemistry LLC is a limited liability company organized under the laws of the State of Delaware having its principal place of business at 525 W Van Buren Street, Chicago, IL 60607.

3. On or about September 1, 1999, Witco Corporation merged with Crompton & Knowles Corporation to form CK Witco Corporation. On or about April 27, 2000, CK Witco Corporation changed its name to "Crompton Corporation." On or about June 28, 2002, Akzo purchased Crompton Industrial Specialties, Inc., a subsidiary of Crompton Corporation. Crompton Industrial Specialties, Inc. was renamed Akzo Nobel Industrial Specialties, Inc., and subsequently merged into Akzo Nobel Surface Chemistry LLC. For the purposes of clarity, these companies other than Akzo shall be referred to as "Akzo's predecessor-in-interest companies," and these companies including Akzo shall be referred to collectively as "the Akzo Companies."

4. Defendant Alan J. Stern is a former employee of the Akzo Companies, and worked as a research chemist on their behalf in and around Dublin, Ohio continuously from approximately December 14, 1998 to January 3, 2003. During that period, Mr. Stern lived at 2939 Jamestown Drive, Powell, Ohio 43065.

5. Upon information and belief, Mr. Stern is currently employed by Defendant Huntsman Petrochemical, LLC, and currently resides at 5925 Ranch Lake Drive, Magnolia, TX 77354.

6. Upon information and belief, Defendant Huntsman Petrochemical, LLC is a limited liability company organized under the laws of the State of Delaware, having its principal place of business at 500 Huntsman Way, Salt Lake City, UT 84108.

## JURISDICTION AND VENUE

7. This action arises under the Lanham Act, 15 U.S.C. § 1051 et seq., including 15 U.S.C. § 1125. This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1125.

8. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over each of the Defendants for the claims asserted herein. For example, Mr. Stern has transacted business and/or is transacting business within the State of Ohio, and particularly, within this judicial district. Mr. Stern contracted to supply his services pursuant to his employment by the Akzo Companies within the State of Ohio, and particularly, within this judicial district. While employed by the Akzo Companies, Mr. Stern worked within the State of Ohio, and particularly, within this judicial district. While employed by the Akzo Companies, and while in the State of Ohio, and particularly, this judicial district, Mr. Stern developed, learned and/or obtained trade secrets and other confidential information of the Akzo Companies in the State of Ohio, and particularly, this judicial district. Mr. Stern agreed not to disclose any trade secrets or other confidential information that he developed, learned and/or obtained while employed by the Akzo Companies within the State of Ohio, and particularly, within this judicial district. During the time of his employment, Mr. Stern resided in this judicial district at 2939 Jamestown Drive, Powell, OH 43065. With respect to Huntsman, Huntsman, for example, has transacted business and/or is transacting business within the State of Ohio, and particularly, within this judicial district. Huntsman has and does now, directly or through intermediaries (including distributors, retailers, and others) ship, distribute, offer for sale, sell, advertise, operate and use products throughout the United States, including in the State

of Ohio and this judicial district. In addition, Huntsman is registered to do business in the State of Ohio and has an agent for service of process in Ohio.

10. Venue is proper in this District under 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the judicial district comprising the United States District Court for the Southern District of Ohio.

## FACTUAL BACKGROUND

### The Companies

11. The Akzo Companies produce, market, and distribute a variety of specialty chemicals and formulations for use in the agricultural industry. Among these specialty chemicals and formulations are adjuvants, *e.g.*, additives that modify the properties of the main ingredient in formulations.

12. By virtue of its purchase of Crompton Industrial Specialties, Inc. and the subsequent merger of that company into Akzo Surface Chemistry LLC, Akzo acquired all trade secrets and other confidential information relating to agricultural adjuvants previously owned by any of its predecessor-in-interest companies.

13. The research of the Akzo Companies includes formulating specialty chemicals for use in the agricultural industry, including adjuvants to be formulated with pesticides (which include herbicides). In doing so, Akzo develops trade secrets and confidential information that includes, but is not limited to, chemical formulations, manufacturing procedures and processes, quality control and assurance methods, and other technical information associated with product development.

14. Huntsman also formulates specialty chemicals for use in the agricultural industry, including adjuvants to be formulated with pesticides. Huntsman is a direct competitor of Akzo

to supply chemicals and formulations, including adjuvants, to companies in the agricultural industry.

15. Both Akzo and Huntsman sell adjuvants to be used in glyphosate-based pesticide formulations.

## Akzo's Trade Secrets and Related Confidential Information

16. The Akzo Companies employed Mr. Stern in Ohio continuously from approximately December 14, 1998 until January 3, 2003.

17. While employed by the Akzo Companies, Mr. Stern developed, learned and/or obtained trade secrets and other confidential information developed by the Akzo Companies, including trade secrets and other confidential information relating to agricultural adjuvants to be used in pesticide formulations. Mr. Stern developed, learned and/or obtained these trade secrets and other confidential information in connection with performing his regular job duties for the Akzo Companies. In particular, Mr. Stern developed, learned and/or obtained trade secrets and confidential information of the Akzo Companies relating to the design, synthesis and use of alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations. The trade secrets and other confidential information that Mr. Stern developed, learned and/or obtained included the identity of specific alkoxylated amidoamines being developed by the Akzo Companies (including their chemical formulas and chemical structures), the properties of these specific alkoxylated amidoamines when used as adjuvants in glyphosate-based pesticide formulations, methods for making these specific alkoxylated amidoamines, and formulations including these alkoxylated amidoamines.

18. The Akzo Companies maintained the secrecy of the trade secrets and other confidential information that they developed relating to the design, synthesis and use of specific alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations.

## Protection of the Trade Secrets and Other Confidential Information

19. The Akzo Companies took diligent steps to identify and protect their trade secrets and confidential information relating to the design, synthesis and use of specific alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations, by, among other things, requiring all employees to sign trade secret non-disclosure agreements and by reviewing the Companies' trade secret policy and importance of maintaining confidentiality with departing employees.

20. On or about July 21, 2002, Mr. Stern signed a Patent and Trade Secret Agreement (hereinafter "Agreement") in which he acknowledged that Akzo was the sole owner of its employees' inventions, and that he was required to maintain the confidentiality of Akzo's confidential information, and that he protect and not use outside of the scope of his employment at Akzo any of Akzo's trade secrets. The Agreement states:

> 1. DISCOVERY, INVENTIONS AND IMPROVEMENTS BY EMPLOYEE
> Employee will promptly report or disclose to Akzo Nobel all discoveries, inventions, ideas or improvements [hereinafter collectively called "Invention(s)"] of whatever nature conceived or made by Employee during Employee's period of employment by Akzo. As a general rule, Employee agrees to report to Akzo Nobel and recognizes Akzo Nobel's sole property right in any invention which was developed on Akzo Nobel's time and while utilizing, directly or indirectly, Akzo Nobel's equipment, supplies, facilities, or trade secret information. . .
>
> 2. MAINTENANCE OF TRADE SECRETS AND CONFIDENTIAL INFORMATION  Employee recognizes and acknowledges that as a result of employment by Akzo Nobel, Employee may develop, obtain or learn about trade secrets or confidential information . . . which is the property of Akzo Nobel . . . Employee agrees to use Employee's best efforts and the utmost diligence to guard and protect said Confidential Information. Employee further agrees that he/she will not, during or after Employee's period of employment by Akzo Nobel, use

>for himself or others, or divulge to others any said Confidential Information which Employee may develop, obtain, or learn about during or as a result of Employee's employment by Akzo Nobel, unless authorized to do so by Akzo Nobel in writing . . . For purposes of this Agreement the terms "trade secrets" and "confidential information" include, without limitation, any information which is not generally known to the public, received from and concerning the affairs of Akzo Nobel or Affiliated Companies, or received by Akzo Nobel or any Affiliated Companies from a third party vendor under obligation of confidentiality.  Below is a general listing which is descriptive of such information but is not intended to be an all inclusive listing of the specific proprietary information which Employee may possess: . . .
>
>>c. Technical Information: Technical information made available to the Employee through various contacts in the product development laboratory, the quality control laboratory and Employee's knowledge of Akzo Nobel's manufacturing processes.  This also includes all technical information and modifications, manufacturing techniques, quality control and assurance methods and procedures and additives . . .

21. On or about December 20, 2002, Mr. Stern resigned from Akzo, effective on or about January 3, 2003, to accept a position with Huntsman working with Curtis Elsik (hereafter "Mr. Elsik").

22. After announcing his resignation on or about December 20, 2002, Mr. Stern underwent an exit interview on or about December 27, 2002.  At that interview, Mr. Stern was reminded that he possessed knowledge of Akzo's trade secret and confidential information and of his obligations concerning the same.  At the conclusion of the interview, Mr. Stern signed an exit interview acknowledgment form, which states, in relevant part:

>At this interview, my employment obligations to protect Akzo Nobel's trade secret and proprietary and confidential information were reviewed.  I hereby acknowledge and warrant that if I have any doubt whether a particular item of information is considered to be a trade secret or confidential or proprietary information of Akzo Nobel, I agree to keep such information secret and not disclose or to use such information for my own benefit or the benefit of others without the express written consent of Akzo Nobel.  I once again acknowledge and agree not to disclose or use any trade secrets or confidential or proprietary information of Akzo Nobel for my own benefit or the benefit of others without the express written consent of Akzo Nobel.

23. On or about December 27, 2002, Akzo sent a letter to Mr. Stern, once again reminding him of his possession of Akzo's trade secrets and Akzo's confidential information, and his obligations concerning the same. This letter emphasized that Mr. Stern learned information "from Akzo Nobel [that] has independent economic value and is not known to the public or other persons. Akzo Nobel takes great effort to protect this information from competitors such as Huntsman Chemical." This letter also noted that if Mr. Stern had any questions concerning his obligation relative to Akzo's trade secrets or confidential information, that he should contact Akzo for guidance.

24. As part of Akzo's continuing diligent efforts to protect its trade secret and confidential information, on or about January 2, 2003, Akzo sent a letter to Mr. Elsik of Huntsman informing him that Mr. Stern has knowledge of Akzo's trade secrets and Akzo's confidential information which Akzo "takes great effort to protect . . . from competitors such as Huntsman Chemical." The letter also indicated that Mr. Stern recognized his duty not to use or disclose that information including in his future employment with Huntsman. The letter also offered to provide guidance to Mr. Elsik concerning his obligations concerning these matters.

25. Akzo never received any queries from Mr. Stern, Mr. Elsik, or Huntsman concerning the potential use of Akzo's confidential information and trade secrets. Akzo also never granted Mr. Stern or Huntsman express written consent to use its confidential information or trade secrets.

**The Misappropriation of the Trade Secrets and False Statement of Ownership**

26. As previously mentioned, Huntsman is a direct competitor to Akzo within the field of adjuvants in glyphosate-based pesticide formulations.

27. On information and belief, after Mr. Stern joined Huntsman, Mr. Stern disclosed trade secrets and confidential information relating to the design, synthesis and use of specific alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations that Mr. Stern developed, learned and/or obtained while employed by the Akzo Companies to Huntsman and to other individuals employed by Huntsman. In doing so, Mr. Stern was acting within the scope of his employment by Huntsman.

28. Subsequently, Huntsman filed patent applications that name Mr. Stern and Mr. Elsik as inventors of the subject matter relating to the design, synthesis and use of alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations, covering subject matter worked on by and/or disclosed to Mr. Stern during his employment by the Akzo Companies. According to the records of the U.S. Patent and Trademark Office, Huntsman is the assignee of U.S Patent Application No. 12/747,555, for a "Method of Preparing Amidoamine Alkoxylates and Compositions Thereof" ("the Pending Huntsman U.S. Application"), filed on or about December 19, 2008, and published on approximately November 4, 2010. The Pending Huntsman U.S. Application covers trade secrets and confidential information that Mr. Stern developed, learned and/or obtained while employed by the Akzo Companies relating to the design, synthesis and use of alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations. Huntsman has also filed a number of foreign counterparts to the Pending Huntsman U.S. Application.

29. On information and belief, the subject matter described in the Pending Huntsman U.S. Application covers at least the use of specific alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations that Mr. Stern developed and/or learned of during his employment by the Akzo Companies.

30. After becoming aware of the Pending Huntsman U.S. Application, Akzo notified Huntsman that the subject matter described in the Pending Huntsman U.S. Application relating to the design, synthesis and use of alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations, covered the subject matter and specific alkoxylated amidoamines that Mr. Stern developed and/or learned of during his employment by the Akzo Companies, and therefore belonged to Akzo. Huntsman did not take any steps to rectify the situation, but instead continued to prosecute the Pending Huntsman U.S. Application.

31. Akzo has developed an alkoxylated amidoamine to be used as an adjuvant in glyphosate-based pesticide formulations that it sells and wants to continue to sell.

32. As a result of the Pending Huntsman U.S. Application, any related applications, and its foreign counterparts, including the publication thereof, a potential customer for Akzo's alkoxylated amidoamine adjuvant raised a concern regarding the ownership rights in the intellectual property described therein concerning at least the use of alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations, to Akzo's detriment.

33. Moreover, the Pending Huntsman U.S. Application, any related applications and the foreign counterparts could issue at any time. This uncertain state of affairs is likely to cause Akzo to lose sales of its alkoxylated amidoamine adjuvant.

34. Akzo has no adequate remedy at law to redress the damage that has been, and is being done, by Mr. Stern's material breach of the Agreement and Mr. Stern and Huntsman's attempt to obtain patents on technologies that rightfully belong to Akzo. Akzo faces an immediate threat of irreparable harm. Accordingly, the Pending Huntsman U.S. Application, any related applications, and all foreign counterparts should be reassigned to Akzo and/or such

other fair and just equitable relief, such as the imposition of a constructive trust in favor of Akzo, should be granted.

## COUNT I

### Violation of Section 43(a)(1)(A) of the Lanham Act
### and the Ohio Deceptive Trade Practices Act by Mr. Stern and Huntsman

35. Akzo incorporates by reference, as if the same were fully set forth herein, all of the allegations contained in the paragraphs 1 through 34 above, and in addition, states:

36. Mr. Stern is party to a valid and enforceable invention assignment and non-disclosure agreement with Akzo protecting trade secret and confidential information disclosed to Mr. Stern during the course of his employment at the Akzo Companies, including the design, synthesis and use of specific alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations.

37. Mr. Stern was privy to trade secret and confidential information, including the design, synthesis and use of specific alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations, during the course of his employment at the Akzo Companies.

38. Mr. Stern and Huntsman misappropriated and misrepresented ownership of this information by filing patent applications that cover this information.

39. The filing and subsequent publication of these patent applications amounts to false and misleading statements concerning the creation and ownership of intellectual property applicable to goods, specifically specialty chemicals for use in the agricultural industry. Defendants' false and misleading statements have a tendency to deceive and create confusion in a substantial portion of the intended audience.

40. These false and misleading statements will materially affect commerce by affecting investment and purchasing decisions, such as decisions by customers regarding the supply of adjuvants for glyphosate-based pesticide formulations.

41. Defendants' actions and conduct as alleged above constitute a violation of Section 43(a)(1)(A) of the Lanham Act, and separately constitute a deceptive trade practice pursuant to the Ohio Deceptive Trade Practices Act, Ohio Rev. Code §§ 4165.01-4165.04.

42. As a direct and proximate result of Defendants' false and misleading statements, in violation of each of the Lanham Act and the Ohio Deceptive Trade Practices Act, and unless Mr. Stern and Huntsman are enjoined from using and/or disclosing Akzo's trade secrets and confidential information, Akzo has suffered and/or will suffer substantial and irreparable harm and damages, including the loss of its good will and competitive place in the agricultural chemical market, damage to its business relationships, and the loss of business.

43. Akzo has no adequate remedy at law to redress the damage that has been, and is being, done by Mr. Stern and Huntsman's false and misleading claim of ownership of intellectual property that rightfully belong to Akzo.  Akzo faces an immediate threat of irreparable harm. Accordingly, the Pending Huntsman U.S. Application, any related applications, and all foreign counterparts should be reassigned to Akzo and/or such other fair and just equitable relief, such as the imposition of a constructive trust in favor of Akzo, should be granted.

## COUNT II

### Breach of Contract by Mr. Stern

44. Akzo incorporates by reference, as if the same were fully rewritten herein, all of the allegations contained in the paragraphs 1 through 43 above, and in addition, states:

45. Mr. Stern is party to a valid and enforceable invention assignment and non-disclosure agreement with Akzo protecting trade secrets and confidential information developed

by and/or disclosed to Mr. Stern during the course of his employment by the Akzo Companies, including the design, synthesis and use of specific alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations.  The Agreement prohibits Mr. Stern from, *inter alia*, disclosing these trade secrets and confidential information to individuals or entities other than Akzo and its employees.

46. Mr. Stern has breached the agreement with Akzo through the actions described above by misappropriating Akzo's trade secrets and confidential information concerning the design, synthesis and use of specific alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations and by using and disclosing Akzo's trade secrets and confidential information without authorization, and by violating other terms of his agreement.

47. Akzo performed all acts and covenants required of it under the agreement.

48. As a direct and proximate result of Mr. Stern's breach of contract, and unless Mr. Stern and Huntsman are enjoined from using and/or disclosing Akzo's trade secrets and confidential information, Akzo has suffered and/or will suffer substantial and irreparable harm and damages, including the loss of its good will and competitive place in the agricultural chemical market, damage to its business relationships, and the loss of business.

49. Akzo has no adequate remedy at law to redress the damage that has been, and is being, done by Mr. Stern's material breach of his Agreement and Mr. Stern and Huntsman's attempt to obtain patents on technologies that rightfully belong to Akzo.  Akzo faces an immediate threat of irreparable harm. Accordingly, the Pending Huntsman U.S. Application, any related applications, and all foreign counterparts should be reassigned to Akzo and/or such other fair and just equitable relief, such as the imposition of a constructive trust in favor of Akzo, should be granted.

**COUNT III**

**Misappropriation of Trade Secrets by Mr. Stern and Huntsman**

50. Akzo incorporates by reference, as if the same were fully rewritten herein, all of the allegations contained in the paragraphs 1 through 49 above, and in addition, states:

51. In the course of business, the Akzo Companies have developed numerous scientific and technical processes, procedures, and products.  These include, but are not limited to, trade secrets relating to the design, synthesis and use of specific alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations.

52. The Akzo Companies have derived significant economic benefit from these trade secrets, providing them with significant competitive advantage in the agricultural industry and allowing them to win lucrative chemical supply contracts with customers.

53. The Akzo Companies have diligently protected their trade secrets and confidential information through measures that include, but are not limited to, requiring all employees to sign trade secret non-disclosure agreements, requiring confidentiality agreements with third-parties before disclosing proprietary information, and reviewing the company's trade secret policy and importance of maintaining confidentiality with departing employees.  The notebooks used by researchers at the Akzo Companies, like Mr. Stern, also contain the written statements that, "This Notebook and all information recorded therein are the exclusive property of this Company.  All contents are strictly confidential."  Akzo also requires the return of all Akzo property at the time of an employee's departure, including, but not limited to, notebooks, files, notes, business plans, customer lists, computer disks, and computer files.

54. Mr. Stern is party to a valid and enforceable invention assignment and non-disclosure agreement with Akzo protecting trade secrets and confidential information developed by and/or disclosed to Mr. Stern during the course of his employment by the Akzo Companies,

including the design, synthesis and use of specific alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations.

55. Mr. Stern was privy to confidential information, including the design, synthesis and use of specific alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations, during the course of his employment at the Akzo Companies.

56. This information is confidential and constitutes trade secrets protectable under the Ohio Uniform Trade Secrets Act, Ohio Rev. Code §§ 1333.61-1333.69.

57. Mr. Stern misappropriated these trade secrets in violation of the Ohio Uniform Trade Secrets Act by, *inter alia*, disclosing them to Huntsman and other individuals employed by Huntsman, and using them to file patent applications. Huntsman is vicariously liable for Mr. Stern's misappropriation of trade secrets because Mr. Stern was acting within the scope of his employment when he disclosed the trade secrets to Huntsman and other individuals employed by Huntsman and used them to file patent applications. Huntsman misappropriated these trade secrets in violation of the Ohio Uniform Trade Secrets Act by, *inter alia*, continuing to prosecute patent applications covering them after being notified that the applications were based on trade secrets Mr. Stern developed, learned and/or obtained while employed by the Akzo Companies.

58. Defendants' actions were willful and malicious in that Mr. Stern and/or Huntsman knowingly and intentionally misappropriated Akzo's trade secrets for their own use and benefit despite the fact that one or both of them were aware of Mr. Stern's duty to maintain the confidentiality of the trade secrets. Akzo is therefore entitled to punitive damages and reasonable attorney's fees and costs in an amount to be determined at trial.

59. As a direct and proximate result of Defendants' misappropriation of trade secrets in violation of the Ohio Uniform Trade Secret Act, and unless Mr. Stern and Huntsman are

enjoined from using and/or disclosing Akzo's trade secret information, Akzo has suffered and/or will suffer substantial and irreparable harm and damages, including the loss of its good will and competitive place in the agricultural chemical market, damage to its business relationships, and the loss of business.

60. Akzo has no adequate remedy at law to redress the damage that has been, and is being, done by the misappropriation of its trade secrets by Mr. Stern and Huntsman. Akzo faces an immediate threat of irreparable harm. Accordingly, the Pending Huntsman U.S. Application, any related applications, and all foreign counterparts should be reassigned to Akzo and/or such other fair and just equitable relief, such as the imposition of a constructive trust in favor of Akzo, should be granted.

## COUNT IV

### Misappropriation of Confidential Information Against Mr. Stern and Huntsman

61. Akzo incorporates by reference, as if the same were fully rewritten herein, all of the allegations contained in the paragraphs 1 through 60 above, and in addition, states:

62. In the course of business, the Akzo Companies have developed numerous scientific and technical processes, procedures, and products. These include, but are not limited to, trade secrets relating to the design, synthesis and use of specific alkoxylated amidoamines as adjuvants in glyphosate-based pesticide formulations.

63. This information constitutes confidential information protectable under Ohio law.

64. The Akzo Companies imparted such information to Mr. Stern in a confidential employer-employee relationship and with the understanding of all parties it would remain confidential.

65. Mr. Stern knowingly breached his duty of confidentiality owed to the Akzo Companies by disclosing the design, synthesis and use of specific alkoxylated amidoamines as

adjuvants in glyphosate-based pesticide formulations to Huntsman and other individuals employed by Huntsman during his employment at Huntsman in violation of Ohio Rev. Code § 1333.81.  In doing so, Mr. Stern was acting within the scope of his employment by Huntsman, and thus Huntsman is vicariously liable under Ohio Rev. Code § 1333.81 for Mr. Stern's misappropriation of confidential information.

66. As a direct and proximate result of Mr. Stern's misappropriation of confidential information, and unless Mr. Stern and Huntsman are enjoined from using and/or disclosing Akzo's confidential information, Akzo has suffered and/or will suffer substantial and irreparable harm and damages, including the loss of its good will and competitive place in the agricultural chemical market, damage to its business relationships, and the loss of business.

67. Akzo has no adequate remedy at law to redress the damage that has been, and is being, done by Mr. Stern's misappropriation of confidential information.  Akzo faces an immediate threat of irreparable harm.  Accordingly, the Pending Huntsman U.S. Application, any related applications, and all foreign counterparts should be reassigned to Akzo and/or such other fair and just equitable relief, such as the imposition of a constructive trust in favor of Akzo, should be granted.

68. Defendants' actions were willful and malicious in that Mr. Stern knowingly and intentionally breached his duty of confidence to the Akzo Companies.  Akzo is therefore entitled to punitive damages and reasonable attorneys' fees and costs in an amount to be determined.

## COUNT V

### Unjust Enrichment Against Huntsman

69. Akzo incorporates by reference, as if the same were fully rewritten herein, all of the allegations contained in the paragraphs 1 through 68 above, and in addition, states:

70. Huntsman has been unjustly enriched by obtaining ownership of the Pending Huntsman U.S. Application, any related applications and all foreign counterparts, and the any patent rights that may be granted based on those applications. These applications describe, claim, and are based on trade secrets and confidential information belonging to Akzo. Huntsman continued to prosecute these applications after being notified that the applications were based on trade secrets and confidential information belonging to Akzo. Akzo has received nothing in return for Huntsman obtaining ownership in these applications and any patent rights that may be granted based on them. Thus, unless Huntsman is ordered to reassign these applications to Akzo, Huntsman will have been unjustly enriched at Akzo's expense.

71. Accordingly, to prevent this unjust enrichment, the Pending Huntsman U.S. Application, any related applications, and all foreign counterparts should be reassigned to Akzo and/or such other fair and just equitable relief, such as the imposition of a constructive trust in favor of Akzo, should be granted.

## DEMAND FOR JURY TRIAL

Akzo demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Akzo request that this court:

1. Enter judgment that Akzo recover compensatory damages for Defendants' wrongdoing in an amount to be established at trial, together with pre-judgment and post-judgment interest thereon at the maximum legal rate;

2. Enter judgment that Akzo recover an award of punitive and other appropriate exemplary damages, disgorgement, restitution, pre-judgment and post-judgment interest as permitted by statute and/or contract;

3. Enter permanent injunctive relief preventing further misappropriation of trade secrets and confidential information by Defendants and breaches of Mr. Stern's agreement with Akzo, as well as the return and/or destruction of all such trade secrets or confidential information in Defendants' possession, and such other further relief necessary to protect Akzo's interest in its trade secrets and confidential information.

4. Enter judgment that U.S. Application No. 12/747,555, any related applications, and all foreign counterparts, be reassigned to Akzo;

5. Enter judgment that Akzo recover attorneys' fees and the costs of suit herein; and

6. Such other and further relief as this court may deem just and proper.

| | |
|---|---|
| Dated: August 23, 2013 | By: /s/ Robert F. Ware <br> Robert F. Ware (0055515) <br> THOMPSON HINE LLP <br> 3900 Key Center <br> 127 Public Square <br> Cleveland, OH 44114-1291 <br> (216) 566-5500 (phone) <br> (216) 566-5800 (fax) <br> Rob.Ware@thompsonhine.com <br><br> Philip B. Sineneng (0083406) <br> THOMPSON HINE LLP <br> 41 S. High Street, Suite 1700 <br> Columbus, OH 43215 <br> (614) 469-3200 (phone) <br> (614) 469-3361 (fax) <br> Philip.Sineneng@thompsonhine.com <br><br> *Attorneys for Plaintiff Akzo Nobel Surface Chemistry LLC* |

Of Counsel:

Michael D. Loughnane
Merri C. Moken
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
(212) 425-7200 (phone)
(212) 425-5288 (fax)